# THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH

| | |
|---|---|
| OWNERS INSURANCE COMPANY, a Michigan corporation,<br><br>*Plaintiff,*<br><br>v.<br><br>CJC FOUNDATIONS, INC., a Utah corporation; the ESTATE OF RICHARD T. JONES; RANDALL B. JONES, an individual; and MARY MALONE, an individual,<br><br>*Defendants*. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [31] PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:22-cv-00676-DBB-DAO<br><br>District Judge David Barlow<br>Magistrate Judge Daphne A. Oberg |

Before the court is Plaintiff Owners Insurance Company's ("Owners") Motion for Summary Judgment.[1] Owners seeks a declaratory judgment that it has no duty to defend or indemnify CJC Foundations, Inc. ("CJC"), Randall B. Jones ("Mr. Jones"), or the Estate of Richard T. Jones (the "Estate") in a state court civil action brought by Mary Malone (the "Underlying Action").[2] For the reasons that follow, the court grants in part and denies in part Owners' motion.

## BACKGROUND[3]

At all relevant points in time, Mr. Jones owned CJC Foundations, Inc.,[4] a Utah corporation[5] that performs concrete foundation and footings projects.[6] CJC shares an address

---

[1] Mot. Summ. J., ECF No. 31, filed Mar. 24, 2023.
[2] *Id.* at 1. The underlying action is *Mary Malone v. Richard T. Jones, Randall B. Jones; and C.J.C. Foundations, Inc.*, No. 210400893 (4th Dist. Ct. Utah, July 2, 2021).
[3] For purposes of summary judgment, the court "construe[s] all facts and make[s] reasonable inferences in the light most favorable to the nonmoving party." *Mincin v. Vail Holdings, Inc.*, 308 F.3d 1105, 1108 (10th Cir. 2002) (citing *Mauldin v. Worldcom, Inc.*, 263 F.3d 1205, 1211 (10th Cir. 2001)).
[4] Jones Dep. 34:15–34:17.
[5] ECF No. 38 at 47.
[6] Jones Dep. 12:12–13:1.

1

with Mr. Jones's personal residence.[7] In 2017, it was a "small business"[8] with "way less" than 22 employees.[9] Richard Tyler Jones ("Tyler") was Mr. Jones's adult son.[10] At times, Tyler worked for CJC as part of its footing crew, and he received paychecks from CJC for periods of time in 2014 and 2015.[11] However, Tyler was not an employee of CJC at the time of the 2017 incident.[12]

In 2017, CJC had an automobile insurance policy through Owners (the "Policy").[13] It is undisputed that CJC is the named insured.[14] The Policy describes thirteen insured items, including a 2000 GMC Yukon ("Yukon").[15] Under the Yukon's details, the Policy states, "Automobile driven for pleasure/commute 0-3 use by a 61 year old operator."[16] The Policy lists five scheduled drivers, including Mr. Jones—the only 61-year-old scheduled driver.[17] None of Mr. Jones's family members—his wife Charlene, his son Tyler, his daughter, or his daughter-in-law/stepdaughter Madylen[18]—were listed as scheduled drivers. Mr. Jones stated that four of the cars on the Policy were not owned by CJC or used by CJC: a Mini Cooper, the Yukon, a Honda Civic, and a Jeep Grand Cherokee.[19] The Mini Cooper and the Yukon were his wife's cars, the

---

[7] *Id.* at 8:15–8:20.
[8] *Id.* at 26:20–26:21.
[9] *Id.* at 11:11–12:5.
[10] *Id.* at 14:13–14:15, 17:15–17:19.
[11] Defs. CJC Foundations, Inc. & Randall B Jones' Answer to Owners Ins. Co.'s First Set of Interrog., Reqs. for Produc. of Docs., & Reqs. for Admis. 4, ECF No. 31-5.
[12] Malone Opp'n 8, ECF No. 37 (admitting that Tyler "was not an employee of CJC at the time of the Incident"); CJC & Jones Opp'n, ECF No. 39 (neglecting to dispute Owners' Statement of Undisputed Facts); Reply to CJC & Jones 2, ECF No. 41 ("As a preliminary matter, CJC did not respond to or in any way address the Statement of Material Facts set forth in Owners Motion. As such, pursuant to Rule 56, the factual allegations set forth in Owners' motion are deemed admitted by CJC."); *see Beard v. Banks*, 548 U.S. 521, 527 (2006) ("[B]y failing specifically to challenge the facts identified in the [opposing party]'s statement of undisputed facts, [the party] is deemed to have admitted the validity of the facts contained in the [opposing party]'s statement."); Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . .").
[13] Auto-Owners Insurance Policy No. 48-339-293-01, ECF No. 31-7 [hereinafter Policy].
[14] Malone Opp'n 8 (admitting that "The Owners Policy's named insured is 'CJC Foundations, Inc.'"); CJC & Jones Opp'n (failing to address Owners' Statement of Undisputed Facts).
[15] Policy, ECF No. 31-7 at 3–9.
[16] *Id.* at 5.
[17] *Id.* at 11.
[18] Jones Dep. 4:13–5:11.
[19] *Id.* at 23:13–25:22.

Civic was his daughter's, and the Grand Cherokee was Tyler's car, driven by Tyler's wife Madylen.[20] Mr. Jones "bundled" his family's personal vehicles with CJC's vehicles on the Policy to get a better rate.[21]

The Policy provided liability coverage.[22] It states, "**We** will settle or defend, as **we** consider appropriate, any claim or **suit** for damages covered by this policy."[23] The coverage applies to "damages for **bodily injury** and **property damage** for which **you** become legally responsible because of or arising out of the ownership, maintenance or use of **your automobile** (that is not a trailer) as an automobile."[24] It applies to such damages "on **your** behalf; on behalf of any **relative** using **your automobile** . . . ; on behalf of any person using **your automobile** . . . with **your** permission or that of a **relative**; and on behalf of any person or organization legally responsible for the use of **your automobile** . . . when used by **you**, a **relative**, or with **your** permission or that of a **relative**."[25] "**You** or **your** means the first named insured shown in the Declarations and if an individual, your spouse who resides in the same household."[26] "**Your automobile**" "means the automobile described in the Declarations."[27] Relative means "a person who resides with **you** and who is related to **you** by blood, marriage or adoption or who is **your** ward or foster child. Relative includes such person who usually resides in **your** household but temporarily lives elsewhere."[28]

---

[20] *Id.* at 23:13–25:22.
[21] *Id.* at 26:9–26:25.
[22] Policy § II, ECF No. 31-7 at 16.
[23] *Id.* § II(1)(a).
[24] *Id.*
[25] *Id.*
[26] *Id.* § I(12).
[27] *Id.* § I(13).
[28] Policy's Utah Amendatory Endorsement, ECF No. 31-7 at 43.

On July 1, 2021, Mary Malone filed a complaint against Tyler, Mr. Jones, and CJC in Utah state court.[29] She alleged that, on July 5, 2017, she was driving when Tyler "cut the corner sharply and hit" her vehicle.[30] According to Ms. Malone, Tyler then fled the scene and went to property owned by CJC or Mr. Jones.[31] The complaint alleged that at the time of the crash, Tyler was under the influence of drugs and/or alcohol, had a history of driving under the influence and of driving at excessive speeds, had received multiple citations for doing so, and had a suspended license.[32] It further alleged that CJC or Mr. Jones owned the vehicle driven by Tyler, solely or in conjunction with the other, or "otherwise had control" of the vehicle.[33]

Ms. Malone asserted that Tyler was willful, reckless, or negligent in causing the cars to collide, that he deliberately fled the scene, and that in doing so, he intentionally or negligently inflicted emotional distress on Ms. Malone and caused her physical injury.[34] She also complained against CJC, alleging that CJC employed Tyler, negligently or recklessly allowed or entrusted Tyler with possession of the vehicle involved in the crash, and knew about Tyler's history of drug and/or alcohol abuse, driving under the influence, driving with excessive speed, and driving on a suspended license.[35] She alleged that CJC negligently or recklessly failed to reasonably train, supervise, and hire its employees.[36] Ms. Malone further alleged that Mr. Jones negligently entrusted Tyler with the vehicle, knowing about his history of substance use and his driving record.[37]

---

[29] Underlying Action Compl., ECF No. 31-1.
[30] *Id.* at ¶¶ 7–9.
[31] *Id.* at ¶ 10.
[32] *Id.* at ¶¶ 12, 15, 17–21.
[33] *Id.* at ¶¶ 13–14.
[34] *Id.* at ¶¶ 26–33.
[35] *Id.* at ¶¶ 41–47, 49, 56.
[36] *Id.* at ¶¶ 50–52, 55.
[37] *Id.* at ¶¶ 61–68.

After the incident was reported to Owners, Owners investigated and appointed defense counsel for CJC and Mr. Jones in the Underlying Action.[38] That state court case is currently stayed pending the resolution of this action.[39] On October 21, 2022, Owners filed this action, seeking a declaratory judgment that there is no coverage under the Policy for the claims alleged by Ms. Malone in the Underlying Action.[40] On March 24, 2023, Owners moved for summary judgment.[41] Ms. Malone filed a response in opposition,[42] as did CJC and Mr. Jones.[43] Owners filed a reply to each opposition.[44]

## DISCUSSION

I. **The Court Resolves the Issue of Owners' Duty to Defend by Considering Extrinsic Evidence Because Owners' Duty to Defend Is Dependent on the Underlying Action Involving Damages Covered by the Policy.**

"An insurance policy is merely a contract between the insured and the insurer."[45] "[W]hether extrinsic evidence is admissible to determine whether an insurer has a duty to defend an insured turns on the parties' contractual terms."[46]

> If the parties make the duty to defend dependent on the allegations against the insured, extrinsic evidence is irrelevant to a determination of whether a duty to defend exists. However, if, for example, the parties make the duty to defend dependent on whether there is actually a "covered claim or suit," extrinsic evidence would be relevant to a determination of whether a duty to defend exists.[47]

---

[38] Mot. Summ. J. 3.
[39] Order Granting Stipulated Motion for Stay, *Mary Malone v. Richard T. Jones, Randall B. Jones; and C.J.C. Foundations, Inc.*, No. 210400893 (4th Dist. Ct. Utah, Nov. 30, 2022).
[40] Compl., ECF No. 2.
[41] Mot. Summ. J.
[42] Malone Opp'n.
[43] CJC & Mr. Jones Opp'n. On March 30, 2023, CJC moved for default judgment as to the Estate. Mot. Default J., ECF No. 34. Because the court grants CJC's Motion for Summary Judgment as to the Estate, the motion for default judgment is moot.
[44] Reply to Malone, ECF No. 40; Reply to CJC & Jones.
[45] *Benjamin v. Amica Mut. Ins. Co.*, 2006 UT 37, ¶ 14, 140 P.3d 1210, 1213 (quoting *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993)). No party disputes that Utah law applies.
[46] *Fire Ins. Exch. v. Est. of Therkelsen*, 2001 UT 48, ¶ 25, 27 P.3d 555, 561.
[47] *Id.*

Insurance "policies commonly create 'a contractual duty [of an insurer] to defend its insured against lawsuits by third-parties alleging liability within the coverage afforded by the policy.'"[48] For example, a standard policy "provides that the insurer will 'provide a defense at [the insurer's] expense by counsel of [the insurer's] choice, even if the suit is groundless, false or fraudulent.'"[49] For these policies, the "duty to defend [would be] controlled by the allegations in the complaint," and it would be an error for the court to consider extrinsic evidence.[50] But for insurance policies that limit the duty to defend to *covered* claims or suits, "it would be appropriate for the trial court to consider extrinsic evidence, [because] otherwise it would be unable to determine whether the claim or suit was 'covered' by the policy."[51]

Owners argues that "the Policy makes the duty to defend (and indemnify) dependent on whether there is actually a covered claim or suit" because it is "similar to the example" in *Fire Insurance Exchange v. Estate of Therkelsen*.[52] In *Therkelsen*, the Utah Supreme Court observed that consideration of extrinsic evidence would be appropriate when the insurance policy "described the duty to defend as follows: 'At our expense and with attorneys of our choice, we will defend an *insured* against any covered claim or suit.'"[53] Here, the Policy states that Owners "will settle or defend . . . any claim or **suit** for damages covered by this policy."[54] It does not state that Owners will defend a claim or suit that "is groundless, false or fraudulent." As Mr. Jones and CJC concede, "this language would appear to permit extrinsic evidence to determine

---

[48] *Id.* at ¶ 23 (quoting Douglas R. Richmond, *Reimbursing Insurers' Defense Costs: Restitution and Mixed Actions*, 35 San Diego L.Rev. 457, 459 (1998)) (alterations in original).
[49] *Id.*
[50] *Id.* (quoting *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So.2d 1072, 1077 n.3 (Fla. 1998)) (alterations in original).
[51] *Id.* at ¶ 24.
[52] Mot. Summ. J. 11.
[53] *Therkelsen*, 2001 UT 48 at ¶ 24 (quoting *Fire Insurance Exchange v. Rosenberg*, 930 P.2d 1202 (Utah Ct. App. 1997)).
[54] Policy § II(1)(a).

whether Owners has a duty to defend."[55] Ms. Malone seemingly concedes the argument entirely.[56]

However, CJC and Mr. Jones argue that, if the court needed to consider extrinsic evidence to determine whether the damages are covered (and, therefore, Owners' duty to defend), it would create an illogical outcome. The extrinsic evidence required, they argue, would be a court decision determining liability—a fact not in existence until the *end* of a case—and that would mean the insurer's duty to defend could not be determined until the end of the case. They argue that this would leave the insured in an undesirable situation: if the insured tenders the defense to the insurer, the insured risks having to reimburse the insurer for the entire cost of his defense should the court determine the insured is not legally responsible for the damages. "This cannot be what is intended by the Policy, and therefore the Court should not consider extrinsic evidence when determining whether Owners has a duty to defend."[57] Owners replies that "contrary to CJC's argument, the duty to defend . . . is based on whether a plaintiff has raised claims which are covered under the terms of the insurance policy."[58]

CJC and Mr. Jones do not argue that there is "vague or ambiguous language in a particular provision," nor that there are "two or more contract provisions, [that,] when read together, give rise to different or inconsistent meanings."[59] And when a policy is not ambiguous, it is construed according to its plain language.[60] The plain language of this Policy states that

---

[55] CJC & Jones Opp'n 4.
[56] Malone Opp'n 13–22. Malone develops rule language about how the duty to defend "is triggered whenever 'the allegations in the underlying complaint . . . if proved, *could* result in liability under the policy.'" *Id.* at 13 (quoting *Nova Cas. Co. v. Able Const., Inc.*, 1999 UT 69, ¶ 8, 983 P.2d 575, 578) (emphasis in Opp'n). However, she makes no argument on the issue, and she then discusses extrinsic evidence from Mr. Jones's deposition in support of her position. Accordingly, Ms. Malone has conceded the issue.
[57] CJC & Jones Opp'n 5.
[58] Reply to CJC & Jones 5.
[59] *Farmers Ins. Exch. v. Versaw*, 2004 UT 73, ¶ 9, 99 P.3d 796, 798 (quoting *U.S. Fid. & Guar. Co. v. Sandt*, 854 P.2d 519, 523 (Utah 1993)).
[60] *Benjamin*, 2006 UT 37 at ¶ 14 (quoting *Saleh v. Farmers Ins. Exch.*, 2006 UT 20, ¶ 21, 133 P.3d 428).

Owners' duty to defend is dependent on whether the "claim or **suit**" is "for damages covered by this policy." The Utah Supreme Court has expressly recognized that an insurer's duty to defend may be conditioned on whether a claim is covered by the policy,[61] so Mr. Jones and CJC's policy argument lacks merit. Accordingly, the court will consider extrinsic evidence to determine whether Owners has a duty to defend.

II. **Owners Does Not Have a Duty to Defend Mr. Jones or the Estate Because the Underlying Action Does Not Contain Covered Claims as to Those Defendants. However, Owners Has Not Met Its Burden to Show that It Does Not Have a Duty to Defend CJC.**

The parties dispute whether Owners has a duty to defend based on the extrinsic evidence. Owners argues that it has no duty to defend because (1) Tyler was not a named insured under the Policy; (2) Tyler is not a relative of CJC under the Policy; and (3) Tyler was not a permissive user of the Yukon. Ms. Malone only disputes Owners' second argument: that Tyler was a relative of the insured. For their part, CJC and Mr. Jones contend that there is a dispute of material fact because the court in the Underlying Action has not yet determined liability.[62]

As noted earlier, "[a]n insurance policy is merely a contract between the insured and the insurer."[63] "[I]f the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language."[64] However, if the insurance "policy is ambiguous[, it] is . . . construed in favor of the policyholder."[65] "[P]olicy language is ambiguous only when it is not 'plain to a person of ordinary intelligence and understanding, viewing the matter fairly and reasonably, in accordance with the usual and natural

---

[61] *Therkelsen*, 2001 UT 48 at ¶ 24.
[62] CJC & Jones Opp'n 5–6 ("Even if the Court considers extrinsic evidence, based on the plain language of the Policy, the Court cannot determine whether Owners has a duty to defend. . . . It is an open issue in the Fourth District Court whether CJC is legally responsible for Ms. Malone's damages.").
[63] *Benjamin*, 2006 UT 37 at ¶ 14 (quoting *Alf*, 850 P.2d at 1274).
[64] *Id.* (quoting *Saleh*, 2006 UT 20 at ¶ 21).
[65] *Versaw*, 2004 UT 73 at ¶ 6.

meaning of words, and in the light of existing circumstances, including the purpose of the policy.'"[66] "[A]mbiguities typically appear in two forms: 'An ambiguity in a contract may arise (1) because of vague or ambiguous language in a particular provision or (2) because two or more contract provisions, when read together, give rise to different or inconsistent meanings, even though each provision is clear when read alone.'"[67]

Considering the Policy, it states, "[**w**]**e** will settle or defend . . . any claim or **suit** for damages covered by this policy."[68] It provides that,

> **SECTION II – LIABILITY COVERAGE**
>
> **1. Coverage**
>
> **a. Liability Coverage – Bodily Injury and Property Damage**
>
> **We** will pay damages for **bodily injury** and **property damage** for which **you** become legally responsible because of or arising out of the ownership, maintenance or use of **your automobile** . . . as an **automobile**. We will pay such damages:
>
> (1) on **your** behalf;
>
> (2) on behalf of any relative using **your automobile** . . . ;
>
> (3) on behalf of any person using **your automobile** . . . with **your** permission or that of a **relative**; and
>
> (4) on behalf of any person or organization legally responsible for the use of **your automobile** . . . when used by **you**, a **relative**, or with **your** permission or that of a **relative**.[69]

"Your automobile" means "the automobile described in the Declarations."[70] The Policy lists the 2000 GMC Yukon as an "item insured" in the Policy's Declarations.[71] "**You** or **your** means the

---

[66] *Calhoun v. State Farm Mut. Auto. Ins. Co.*, 2004 UT 56, ¶ 32, 96 P.3d 916, 924–25 (quoting *Nielsen v. O'Reilly*, 848 P.2d 664, 666 (Utah 1992)).
[67] *Versaw*, 2004 UT 73 at ¶ 9 (quoting *Sandt*, 854 P.2d at 523).
[68] Policy § II(1)(a).
[69] *Id.*
[70] *Id.* § I(13).
[71] Policy, ECF No. 31-7 at 5.

9

first named insured shown in the Declarations and if an individual, your spouse who resides in the same household."[72] It is undisputed that CJC is the named insured.[73] There is no other named insured on the Policy. CJC is not an individual, and therefore, under the express language of the Policy, "you" does not include a spouse.

Accordingly, the Policy describes four circumstances under which Owners will pay for damages "because of or arising out of the ownership, maintenance or use" of the Yukon: on CJC's behalf,[74] on behalf of CJC's relative,[75] on behalf of a person with CJC's permission or CJC's relative's permission,[76] or on behalf of any person responsible for the use of the Yukon when used by CJC, CJC's relative, or with CJC's permission or CJC's relative's permission.[77]

### A.  Owners Has Not Carried Its Burden to Show that the Extrinsic Evidence Establishes No Risk of Covered Damages for CJC Under the Insurance Policy's First Provision.

Owners "will pay damages for **bodily injury** and **property damage** for which [CJC] become[s] legally responsible because of or arising out of the ownership, maintenance or use of [Yukon]."[78] The undisputed evidence shows that Mr. Jones, not CJC, owned the Yukon,[79] so there is no risk for CJC to become legally responsible for damages arising out of the Yukon's ownership. Next, there is no argument or evidence that CJC's maintenance of the Yukon could result in its liability—the underlying case simply has nothing to do with maintenance. Finally, it

---

[72] Policy § I(12).
[73] Malone Opp'n 8 (admitting that "The Owners Policy's named insured is 'CJC Foundations, Inc.'"); CJC & Jones Opp'n (failing to address Owners' Statement of Undisputed Facts).
[74] Policy § II(1)(a)(1).
[75] *Id.* § II(1)(a)(2).
[76] *Id.* § II(1)(a)(3).
[77] *Id.* § II(1)(a)(4).
[78] *Id.* § II(1)(a)(1).
[79] Malone Opp'n 6 (admitting that "On the date and time of the Incident, [Tyler] was driving a 2000 GMC Yukon owned by [Mr.] Jones personally"); CJC & Jones Opp'n (failing to address Owners' Statement of Undisputed Facts).

is undisputed that Tyler was not an employee of CJC at the time of the incident[80] and that no one, CJC included, gave Tyler permission to drive the Yukon,[81] minimizing the risk that "use" of the Yukon could result in CJC's liability.

However, in its September 26, 2022 Order on Summary Judgment, the state court in the Underlying Action denied CJC's motion for summary judgment without prejudice to grant Ms. Malone additional time to "continue to conduct discovery on the potential liability" of CJC.[82] Just under a month later, Owners filed this case on October 21, 2022.[83] The Underlying Action was stayed that November, pending resolution of this action.[84] On December 30, 2022, the magistrate judge in this case entered a Scheduling Order, setting the close of fact discovery for April 28, 2023. [85] Owners then filed this motion for summary judgment on March 24, 2023.[86] While Owners argues that "no additional evidence of CJC's liability has been provided to date,"[87] it is not clear that fact discovery has closed in either action. Because the court cannot conclude there is no risk that extrinsic evidence could result in liability for CJC, Owners has not met its burden for summary judgment in regard to CJC.

---

[80] *Id.* at 8 (admitting that Tyler "was not an employee of CJC at the time of the Incident"); CJC & Jones Opp'n (failing to address Owners' Statement of Undisputed Facts).
[81] *Id.* at 7 (admitting that Tyler "did not have permission to drive the vehicle on July 5, 2017"); CJC & Jones Opp'n (failing to address Owners' Statement of Undisputed Facts).
[82] Order on Motion for Summary Judgment and Statements of Discovery Issues, *Mary Malone v. Richard T. Jones, Randall B. Jones; and C.J.C. Foundations, Inc.*, No. 210400893 (4th Dist. Ct. Utah, Sept. 26, 2022). In that case, Owners filed its Motion for Summary Judgment within two weeks of its stipulation to extend fact discovery by an additional 90 days, meaning that Owners filed its dispositive motion when there remained around two and a half months before discovery closed. Notice of the Parties Stipulated Agreement to Extend the Fact Discovery Deadlines, *Mary Malone v. Richard T. Jones, Randall B. Jones; and C.J.C. Foundations, Inc.*, No. 210400893 (4th Dist. Ct. Utah, Mar. 21, 2022); Defendants Motion for Summary Judgment, *Mary Malone v. Richard T. Jones, Randall B. Jones; and C.J.C. Foundations, Inc.*, No. 210400893 (4th Dist. Ct. Utah, Apr. 6, 2022).
[83] Compl., ECF No. 2.
[84] Order Granting Stipulated Motion for Stay, *Mary Malone v. Richard T. Jones, Randall B. Jones; and C.J.C. Foundations, Inc.*, No. 210400893 (4th Dist. Ct. Utah, Nov. 30, 2022).
[85] Scheduling Order, ECF No. 27, entered Dec. 30, 2022.
[86] Mot. Summ. J.
[87] Reply to CJC & Jones 7.

### B. *CJC Does Not Have Relatives, so the Policy Provisions Extending Liability Coverage to "Relatives" Are Inapplicable.*

Concerning the second,[88] third,[89] and fourth provision of the Policy's Liability Coverage,[90] a "relative" is "a person who resides with **you** and who is related to **you** by blood, marriage or adoption or who is **your** ward or foster child. Relative includes such person who usually resides in **your** household but temporarily lives elsewhere."[91] As it is undisputed that "you" means CJC, it appears that this provision is inapplicable; the named insured is a corporation, and corporations are not related to persons by blood, marriage, or adoption.

However, Ms. Malone argues that this provision provides coverage because Tyler is Mr. Jones's son. She argues that the provision for coverage for relatives is ambiguous because CJC is a small business owned by one person and sharing the same address as its owner's residence.[92] In support, she cited three cases in which courts found that closely-held corporations' officers, shareholders, or employees may fall within the purview of an insured corporation's "family members."[93] Because of this purported ambiguity, her argument goes, the Policy should be construed against Owners to provide coverage for relatives of Mr. Jones. Owners counters that "language in insurance policies purporting to insure relatives where the named insured is a corporation is null and void because corporations do not have relatives."[94] Owners cites to numerous cases in support of this proposition, but acknowledges that Utah's Supreme Court has not considered the issue.[95]

---

[88] Policy § II(1)(a)(2).
[89] *Id.* § II(1)(a)(3).
[90] *Id.* § II(1)(a)(4).
[91] Policy's Utah Amendatory Endorsement, ECF No. 31-7 at 43.
[92] Malone Opp'n 14–17.
[93] *Hager v. Am. W. Ins. Co.*, 732 F. Supp. 1072, 1075 (D. Mont. 1989); *see Hawkeye-Sec. Ins. Co. v. Lambrecht & Sons, Inc.*, 852 P.2d 1317, 1319 (Colo. App. 1993); *Ceci v. Nat'l Indem. Co.*, 225 Conn. 165, 169, 622 A.2d 545, 547 (1993).
[94] Mot. Summ. J. 14.
[95] *See id.*

"When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule."[96] "If no decision by that court exists, then [the federal court] must apply 'what [it] find[s] to be the state law after giving 'proper regard' to relevant rulings of other courts of the State.'"[97] "The decision of an intermediate appellate state court 'is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'"[98]

In 2001, the Utah Court of Appeals considered the issue and concluded that "the inclusion of the term 'family member' in a commercial insurance policy, which is issued to a corporation, does not create an exploitable ambiguity."[99] In *Pollard v. Truck Insurance Exchange*, the policy "language promise[d] that [the insurer] 'will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.''"[100] The policy provided that "the insured" is "1. You 2. If you are an individual, any 'family member.'"[101] The insureds were two corporations solely owned by the plaintiff.[102] While operating a vehicle not listed in the policy, the plaintiff was injured in an accident.[103] The court found that the policy was not ambiguous: "[B]ecause it is not possible for a corporation to have a spouse or family members, it is unreasonable to assume that the use of the term 'family member' in a commercial insurance contract issued to a corporate entity creates an exploitable

---

[96] *Peterson v. XPO Logistics, Inc.*, 812 F. App'x 754, 757 n.3 (10th Cir. 2020) (quoting *Nelson v. United States*, 915 F.3d 1243, 1248 (10th Cir. 2019)).
[97] *Gaedeke Holdings VII LTD v. Baker*, 683 F. App'x 677, 683 (10th Cir. 2017) (quoting *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007)).
[98] *Folks v. State Farm Mut. Ins. Co.*, 299 F. App'x 748, 757 (10th Cir. 2008) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)).
[99] *Pollard v. Truck Ins. Exch.*, 2001 UT App 120, ¶ 11, 26 P.3d 868, 871.
[100] *Id.* at ¶ 8.
[101] *Id.*
[102] *Id.* at ¶ 2.
[103] *Id.* at ¶ 3.

ambiguity."[104] It explained that, while the plaintiff had cited to "several cases from other jurisdictions," the court's adopted position was the "majority viewpoint."[105] Accordingly, it granted summary judgment to the insurer.[106]

The position of the Utah Court of Appeals in *Pollard* is aligned with the vast majority of other jurisdictions that have considered the issue of whether references to family members or relatives in an insured corporation's insurance policy are ambiguous.[107] Ms. Malone does not point to any "persuasive data" that the Utah Supreme Court would rule otherwise in this situation. Instead, Ms. Malone identified three cases decided between 1989 and 1993[108]—in other words, cases that were published at the time the Utah Court of Appeals decided *Pollard*. Indeed, the Utah Court of Appeals cited to two of Ms. Malone's cases and expressly discussed one of them, finding its application had been limited to its particular facts and noting that both were minority viewpoints.[109] Further, in the case that Ms. Malone characterized as "particularly instructive"—*Ceci v. National Indemnity Company*—the Connecticut Supreme Court arrived at its decision after applying a rule of construction that Utah courts do not recognize: the reasonable expectations doctrine.[110] Finally, none of the cases Ms. Malone cited involve extending the term

---

[104] *Id.* at ¶ 9.
[105] *Id.*
[106] *Id.* at ¶ 20.
[107] *See Am. Econ. Ins. Co. v. Bogdahn*, 2004 OK 9, ¶ 20, 89 P.3d 1051, 1056 ("The vast majority of jurisdictions conclude as a matter of law that similar policy language is not ambiguous: Arizona, Colorado, Florida, Georgia, Hawai'i, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Mexico, New York, North Carolina, Ohio, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, and Washington.").
[108] *Ceci*, 225 Conn. 165; *Hager*, 732 F. Supp. 1072; *Hawkeye-Sec.*, 852 P.2d 1317.
[109] *Pollard*, 2001 UT App 120 at ¶ 9 n.1 (listing and summarizing holdings of the plaintiff's cited cases, including *Hager* and *Hawkeye-Security*, and noting that the latter had limited application).
[110] *Compare Ceci*, 225 Conn. at 173 ("[T]he policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view." (quoting *Cody v. Remington Electric Shavers*, 179 Conn. 494, 497, 427 A.2d 810 (1980)); *with Alf*, 850 P.2d at 1275 ("[T]his court recently addressed the validity of the reasonable expectations doctrine . . . and declined to adopt it as the law in Utah.").

14

"family member" or "relative" to a *former* employee or to relatives of a shareholder or officer who are not themselves employees, officers, or shareholders.[111]

Without any persuasive data that the Utah Supreme Court would rule differently in this case than the Utah Court of Appeals did in *Pollard*, the court believes that the Utah Supreme Court would find that the provision referring to "relatives" in CJC's insurance policy is not ambiguous. In the absence of ambiguity, "the parties' intentions are determined from the plain meaning of the contractual language."[112] Accordingly, "relative" has no application in this Policy because CJC is a corporation and corporations do not have relatives. Therefore, the provisions concerning liability coverage on behalf of relatives or on behalf of those who have the permission of a relative cannot be the basis of Owners' duty to defend.

### C. It Is Undisputed that Tyler Did Not Have Permission to Use the Yukon, so There Is No Risk that the Provisions Concerning the Yukon's Users Who Have CJC's Permission Will Result in Coverage.

The third and fourth provisions provide that Owners will pay damages "on behalf of any person using [the Yukon] with [CJC's] permission" and "on behalf of any person or organization legally responsible for the use of [the Yukon] . . . when used . . . with [CJC's] permission."[113] It is undisputed that Tyler did not have permission to use the Yukon.[114] Accordingly, there is no risk that the Policy will provide coverage to Tyler or Mr. Jones as a result of these provisions.

---

[111] *Hager*, 732 F. Supp. at 1073 (finding shareholder of insured corporation could be the corporation's "family member"); *Hawkeye-Sec.*, 852 P.2d at 1319 (finding "active officer of the corporation" was a family member of the corporation); *Ceci*, 225 Conn. at 169 (finding employee—and brother of corporation's sole shareholder—was a family member of the corporation).
[112] *Benjamin*, 2006 UT 37 at ¶ 14 (quoting *Saleh*, 2006 UT 20 at ¶ 21).
[113] Policy § II(1)(a)(3)–(4).
[114] Malone Opp'n 7 (admitting that Tyler "did not have permission to drive the vehicle on July 5, 2017"); CJC & Jones Opp'n (failing to address Owners' Statement of Undisputed Facts).

### D. It Is Undisputed that Tyler Was Not Employed by CJC, so There Is No Risk that the Provision Concerning the Yukon's Use by CJC Will Result in Coverage.

The last circumstance covered by the Policy is for damages "on behalf of any person or organization legally responsible for the use of [the Yukon] . . . when used by [CJC]."[115] It is undisputed that Tyler was not employed by CJC on the date of the accident, and there is evidence that Tyler "was not working for the company" on July 5, 2017 and that no one at CJC "knew anything about what Tyler was doing" that day.[116] Because the extrinsic evidence shows that CJC was not using the Yukon on July 5, 2017, there is no risk that the Policy provides coverage for liability under this provision.

In conclusion, there is no risk that the Underlying Action involves covered claims against Mr. Jones or the Estate. Accordingly, Owners does not have a duty to defend Mr. Jones or the Estate. Because the "duty to defend is broader than its duty to indemnify,"[117] "where 'there is no duty to defend, there can be no duty to indemnify.'"[118] Accordingly, Owners also does not have a duty to indemnify Mr. Jones or the Estate.

However, Owners has not carried its burden to show that there is no risk that the Underlying Action's claims are not covered as to CJC. Because the court cannot conclude that Owners does not have a duty to defend based on the extrinsic evidence at this point in litigation, namely, before fact discovery has clearly closed in either case and where the state court has declined to decide summary judgment in favor of permitting additional discovery, Owners is not entitled to summary judgment on either its duty to defend or duty to indemnity as to CJC.

---

[115] Policy § II(1)(a)(4).
[116] Jones Dep. 27:1–27:9.
[117] *Sharon Steel Corp. v. Aetna Cas. & Sur. Co.*, 931 P.2d 127, 133 (Utah 1997).
[118] *Derma Pen, LLC v. Sentinel Ins. Co., Ltd.*, 545 F. Supp. 3d 1177, 1202 (D. Utah 2021) (citing *Mid-Am. Pipeline Co., LLC v. Mountain States Mut. Cas. Co.*, 2006 WL 1278748, at *1 (D. Utah 2006)).

## ORDER

IT IS HEREBY ORDERED that Owners' Motion for Summary Judgment is GRANTED in part and DENIED in part. The court DENIES without prejudice Owners' motion as to C.J.C. Foundations, Inc. The court GRANTS Owners' motion as to the Estate of Richard T. Jones and Randall B. Jones.

Signed July 21, 2023.

BY THE COURT

David Barlow
United States District Judge